UNITED STATES, Appellee

v

EUGENE F. PAPENHEIM, Sergeant,
U. S. Air Force, Appellant

19 USCMA 203, 41 CMR 203

No. 22,298

January 30, 1970

*Major William H. Seckinger* argued the cause for Appellant, Accused. With him on the brief was *Colonel Bertram Jacobson.*

*Lieutenant Colonel Henry R. Lockington* argued the cause for Appellee, United States. With him on the brief were *Colonel James M. Bumgarner* and *Lieutenant Colonel Robert W. Vayda.*

## Opinion of the Court

FERGUSON, Judge:

The accused was convicted by general court-martial of six specifications involving mail matters, in violation of Article 134, Uniform Code of Military Justice, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for six months,[1] and reduction to the grade of Airman Basic. Intermediate appellate authorities have affirmed the findings and sentence without change. We granted review on the single issue of whether the evidence is sufficient in law and in fact to establish the guilt of the appellant of specifications 1 through 4 of the Charge.

Each of the specifications, 1 through 4, allege that the "[accused] did, at Aviano Air Base, Italy, on or about 26 November 1968, wrongfully and un-

---

[1] The convening authority directed that the sentence be served at the 3320th Retraining Group, Lowry Air Force Base, Colorado.

lawfully take certain mail matter, . . . out of the unit mail box . . . before . . . [the mail matter was] actually received by the person to whom . . . [it was] addressed."

Initially, the Government's case consisted of the testimony, through an interpreter, of an Italian civilian guard at the base; that of an agent of the Office of Special Investigations; introduction of the mail matter which formed the basis for the specifications; and stipulations of testimony by the addressees that the pertinent mail was never received by them. When trial counsel announced that he had nothing further to present, defense counsel rested without presenting any evidence. At this point, the law officer inquired as to whether the court members desired to have any witnesses called or recalled. They did and the resultant testimony consumed a larger portion of the record than had previously been made. When trial counsel participated in the questioning of the witnesses and defense counsel cross-examined, most of the inquiry was precipitated by the desire of the court to obtain additional information and to clarify matters on which testimony had already been given.

We do not believe that the participation of the court members was such as to establish a propensity on their part to convict, regardless of the matters presented. United States v Flagg, 11 USCMA 636, 29 CMR 452. Cf. cases cited in *Flagg*, at page 639. Rather, it appears to have stemmed from a realization that the state of the evidence, when trial and defense counsel initially rested their cases, raised more questions than it answered. So long as the questioning by court members does not reach the level of partisan advocacy, it is not improper, for, in military law, a court member has a right to question a witness. United States v Blankenship, 7 USCMA 328, 22 CMR 118; United States v Sears, 6 USCMA 661, 20 CMR 377; United States v Smith, 6 USCMA 521, 20 CMR 237. Their inquiry, in this case, was as favorable to the accused as to the prosecution and

served to flesh out what can, even now, only be described as a poorly tried case.

The evidence, as finally established, reflects that a civilian guard at the Aviano Air Base, upon entry into the base post office at about midnight, became suspicious when he observed the accused depart therefrom in an apparently hurried manner. When the guard observed a quantity of unopened mail either under or next to a radiator on which the accused had been sitting, he pursued the accused, caught up with him outside, where he was standing next to a nearby barracks, and turned him and the mail over to the base security police (specifications 1 through 4). An agent of the Office of Special Investigations, upon securing written permission from the accused, who was then in custody, searched the latter's room and found two opened letters, not addressed to the accused, in the drawer of a night stand next to the bed (specifications 5 and 6). The noncommissioned officer in charge of the post office revealed that base personnel have access to their mail boxes on a twenty-four-hour basis and that it is not unusual to find a large number of them unlocked at any one time.

The test to be applied in determining the sufficiency of the evidence is whether there is, in the record, some competent evidence from which the members of the court-martial were entitled to find beyond a reasonable doubt, the existence of every element of the offense charged. United States v Wilson, 13 USCMA 670, 33 CMR 202; United States v Guerra, 13 USCMA 463, 32 CMR 463. It is axiomatic that a conviction cannot be sustained on the basis of suspicion or surmise. United States v O'Neal, 1 USCMA 138, 2 CMR 44; United States v Whitley, 3 USCMA 639, 14 CMR 57; United States v Dickenson, 6 USCMA 438, 20 CMR 154.

In specifications 1 through 4 the accused allegedly did "wrongfully and unlawfully take certain mail matter." The staff judge advocate, in his posttrial review, recognized the weakness of the evidence with regard to the ele-

ment of wrongful taking but believed that, when coupled with the further evidence of the two letters found among the accused's personal effects, the evidence as a whole was sufficient to convict.

A permissible inference which may be drawn from the accused's unexplained possession of the ▮▮▮ letters in specifications 5 and 6, and the fact that the addressees never received them, is that the accused stole the letters *described in those specifications*. United States v Ocamb, 12 USCMA 492, 31 CMR 78; United States v Hairston, 9 USCMA 554, 26 CMR 334. But may this inference be used to further infer that the accused also took the mail identified in specifications 1 through 4, at a different time? We think not. Paragraph 138*g*, Manual for Courts-Martial, United States, 1969. See also United States v Pavoni, 5 USCMA 591, 18 CMR 215.

In the first place, there is no evidence that the accused ever possessed or exercised control, authority, or dominion over this mail. True, it was on the floor next to or under the radiator, near which he was standing or upon which he was sitting, but the civilian guard specifically testified that he never saw the mail in the accused's hands. Secondly, the post office was open to the public on a twenty-four-hour basis and there are other possible explanations for the presence of the mail in this unusual location, besides the one necessary to this case that the accused took the mail from the boxes and placed it where it was found. United States v Spain, 17 USCMA 347, 38 CMR 145. See also United States v Shenefield, 18 USCMA 453, 40 CMR 165. Absent some evidence of possession, control, or dominion over the property, there is no justification for drawing an inference from the testimony in this case that the accused took the mail in question. United States v Spain, supra. It is well established that departure ▮▮▮ from the scene after a crime has been committed, of itself, does not warrant an inference of guilt. See State v Sullivan, 43 NJ 209, 203 A2d 177 (1964), citing Wigmore, Evidence, 3d ed, § 276, page 111, and 1 Wharton, Criminal Evidence, 12th ed, § 205, page 414. We do not believe that the guard's testimony as to the manner of accused's departure from the post office is sufficient to "reasonably justify an inference that it was done with a consciousness of guilt and pursuant to an effort to avoid an accusation based on that guilt." State v Sullivan, supra, at page 192. The essential element that the accused took the mail identified in specifications 1 through 4 remains unproven.

The decision of the board of review affirming accused's conviction of specifications 1 through 4 is reversed and the specifications are ordered dismissed. The record of trial is returned to the Judge Advocate General of the Air Force. The Court of Military Review may reassess the sentence on the basis of the remaining findings of guilty of specifications 5 and 6.

Chief Judge QUINN and Judge DARDEN concur.